UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

In Re

MONAHAN FORD CORPORATION
OF FLUSHING,

                      Debtor.

----------------------------------------------------------------X

ALAN NISSELSON, ESQ., as Chapter 7 Co-Trustee of
Monahan Ford Corporation of Flushing,

                 Plaintiff,

              -against-

FORD MOTOR COMPANY, FORD MOTOR
CREDIT COMPANY, GEORGE PAPANTONIOU
a/k/a GEORGE PAPPAS, KAY PAPANTONIOU,
GADI BEN-HAMO, NATIONAL STAR EXECUTIVE
SALES, LLC, JOSSEF KAHLON, SAMUEL
GOLDSTEIN & CO., P.C., STUART GOLDSTEIN,
STEVE LEON,

               Defendants.

----------------------------------------------------------------X

**Bankruptcy No. 02-23134-608**

**Adv. Pro. No. 04-01500**

**CV-05-0789(SJF)(RML)**
**CV-05-0925(SJF)(VVP)**

**OPINION & ORDER**

FEUERSTEIN, J.

Pending before the Court are the motions of Ford Motor Credit Company (FMCC) and Ford Motor Company (Ford), brought pursuant to 28 U.S.C. § 157(d) and Rule 5011 of the Federal Rules of Bankruptcy Procedure, to withdraw the automatic reference of <u>Nisselson v. Ford Motor Co.</u>, Adv. Pro. No. 04-1500 (the adversary proceeding), an adversary proceeding pending in the bankruptcy case entitled <u>In re Monahan Ford Corporation of Flushing</u>, Case No. 02-23134-

1

608, in the United States Bankruptcy Court for the Eastern District of New York (the Monahan Ford case). Samuel Goldstein & Co., P.C. and Stuart Goldstein (the Goldstein defendants), and National Star Executive Sales, LLC, Gadi Ben-Hamo, and Jossef Kahlon (the National Star defendants) move for leave to join in FMCC's and Ford's motions. For the reasons set forth below, the motions are denied without prejudice to renewal when the bankruptcy court certifies that the adversary proceeding is ready for trial.

I.  BACKGROUND[1]

Prior to October 17, 2002, Monahan Ford Corporation of Flushing (Monahan Ford or debtor) owned and operated an automobile dealership in Queens, New York. On October 17, 2002, debtor commenced the Monahan Ford case by filing a voluntary petition for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code. On February 14, 2003, the Monahan Ford case was converted to one under Chapter 7 of the United States Bankruptcy Code. On February 18, 2003, Richard J. McCord, Esq. (Trustee McCord) was appointed trustee of the bankruptcy estate.

The total sum of claims asserted against the bankruptcy estate is $13,182,746.50, including the proof of claim filed by FMCC in the amount of not less than $8,243,534.95. Ford, the Goldstein defendants and the National Star defendants have not filed claims against the bankruptcy estate.

On July 29, 2004, the bankruptcy court ordered the appointment of a co-trustee to handle all matters dealing with the National Star defendants. On August 2, 2004, Alan Nisselson, Esq.

---

[1] The facts are undisputed unless otherwise indicated.

(Nisselson) was appointed co-trustee in accordance with that order. On October 14, 2004, the bankruptcy court expanded Nisselson's role as co-trustee to include, *inter alia*, commencement of an adversary proceeding.

On October 16, 2004, Nisselson filed the initial complaint in the adversary proceeding against Ford, FMCC, George Papantoniou, Kay Papantoniou, the National Star defendants, the Goldstein defendants, and Steve Leon (collectively defendants), in the bankruptcy court. On October 18, 2004, Nisselson filed an amended complaint in the adversary proceeding alleging, *inter alia*, that Ford, as the franchisor of debtor, together with the other defendants named therein, "engaged in fraud and conspiracy to commit fraud * * * in order to artificially prolong the life of [debtor], which they knew to be at or in the zone of insolvency, so that each * * * could * * * exploit [debtor] to serve their own interests." (Amended Complaint in the adversary proceeding [Compl.], Exhibit A to the declaration of Michael J. Levin [Levin Decl.], ¶ 1). Nisselson alleges, *inter alia*, violations of the Automobile Dealers Day in Court Act (ADDCA), 15 U.S.C. §§ 1221-1225, and the New York Franchised Motor Vehicle Dealer Act, Vehicle and Traffic Law §§ 460, *et seq.*, as well as claims (1) to recover damages for, *inter alia*, breach of contract, breach of the covenant of good faith and fair dealing, and promissory estoppel; (2) for an accounting; (3) to avoid a number of fraudulent conveyances and preferential conveyances; (4) for equitable subordination of FMCC's claim against debtor; and (5) to turnover property of the estate. In addition, the amended complaint alleges that defendants conspired to violate the ADDCA. (Compl., ¶¶ 126-129).

The National Star defendants have filed an answer to the amended complaint and a jury demand in the adversary proceeding. FMCC, Ford and the Goldstein defendants have only filed

3

motions to dismiss the adversary proceeding in the bankruptcy court.

II. DISCUSSION

A. Withdrawal of the Reference

In <u>Northern Pipeline Construction Co. v. Marathon Pipe Line Co.</u>, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the Supreme Court held that Congress could not constitutionally empower a "non-Article III" bankruptcy court judge with the authority to adjudicate a state law breach of contract action, based on a pre-petition contract, brought by a debtor against a defendant who had not filed a claim with the bankruptcy court. As a result of that holding, Congress enacted 28 U.S.C. § 157, which conferred upon district courts the authority to refer cases to bankruptcy courts in which the underlying action arises under Title 11 of the Bankruptcy Code, or is related to a case that arises thereunder. <u>See</u> 28 U.S.C. § 157(a); <u>In re Enron Corp.</u>, No. 04 Civ. 7693, 2004 WL 2912893, at * 1 (S.D.N.Y. Dec. 14, 2004). Under the authority of that statute, all Chapter 11 cases in this District are automatically referred to the District's bankruptcy judges. <u>See</u> <u>In re Apponline.com, Inc.</u>, 303 B.R. 723, 726 (E.D.N.Y. 2004).

28 U.S.C. § 157(d) provides, in pertinent part, as follows:

> "The district court <u>may</u> withdraw, in whole or in part, any case or proceeding referred [to a bankruptcy judge] under this section, * * * for cause shown. The district court <u>shall</u> * * * so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." (Emphasis added).

Rule 5011(a) of the Federal Rules of Bankruptcy Procedure provides the procedure for withdrawing a reference.

4

1. Mandatory Withdrawal

FMCC contends that 28 U.S.C. § 157(d) mandates withdrawal of the reference because the amended complaint in the adversary proceeding raises "non-core" state and federal claims based in contract, tort, equity and violations of the ADDCA and the New York State Franchised Motor Vehicle Dealer Act. Ford contends that withdrawal of the reference is mandated because the claims raised in the adversary proceeding involve substantial questions of federal law, specifically the ADDCA. The Goldstein defendants and the National Star defendants contend, *inter alia*, that they should be permitted to join in FMCC's and Ford's motions, since the arguments therein apply equally to them and Nisselson would not be prejudiced by the joinder[2].

Nisselson contends, *inter alia*, that the adversary proceeding is not subject to mandatory withdrawal because defendants have only established that its resolution will require the application of established federal law to a particular set of facts, and not that its resolution will require significant and material interpretation of non-bankruptcy federal laws. Specifically, Nisselson contends that the issue of whether the conduct of Ford and the other defendants was in "good faith" or "coercive" under the ADDCA is an issue of fact and does not require an interpretation of the ADDCA.

In response, Ford contends, *inter alia*, that in their respective motions to dismiss filed in bankruptcy court, defendants raised legal issues of first impression in the Second Circuit which would require significant interpretation of a non-bankruptcy federal law, thereby mandating withdrawal.

---

[2] Nisselson does not oppose the joinder of the Goldstein and National Star defendants. Accordingly, those defendants are permitted to join in the motions of FMCC and Ford.

5

The mandatory withdrawal provision of § 157(d) is to be read narrowly. See, In re Houbigant, Inc., 185 B.R. 680, 683 (S.D.N.Y. 1995)(holding that because the mandatory withdrawal provision, if read literally, would eviscerate much of the work of the bankruptcy courts, the courts are admonished by the legislative history to construe that provision narrowly); In re CIS Corp., 172 B.R. 748, 753 (S.D.N.Y. 1994)(holding that mandatory withdrawal is narrowly applied); In re Johns-Manville Corp., 63 B.R. 600, 602 (S.D.N.Y. 1986)(holding that the mandatory withdrawal provision is to be construed narrowly, so that it does not become an "escape hatch" for matters properly before the bankruptcy court). Withdrawal is not mandatory "unless the district court can make an affirmative determination that resolution of the claims will require substantial and material consideration of non-code statutes." Houbigant, 185 B.R. at 684 (internal quotations and citation omitted); see also In re McCrory Corp., 160 B.R. 502, 505 (S.D.N.Y. 1993)(holding that mandatory withdrawal is reserved for cases in which substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for the resolution of the proceeding). The statute mandates withdrawal to the district court only of cases and issues "that would otherwise require a bankruptcy court judge to engage in significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes." City of New York v. Exxon Corp., 932 F.2d 1020, 1026 (2d Cir. 1991); see also Houbigant, 185 B.R. at 684 (holding that cases which involve only the application of non-Code federal statutes to a particular set of facts are excluded from mandatory withdrawal); McCrory, 160 B.R. at 505 (finding that courts have defined "consideration," in the context of § 157(d), to mean "something more than the mere process of examining, thinking about, or taking into account"); Johns-Manville, 63 B.R. at 602 (holding that it is issues requiring significant

6

interpretation of federal laws that Congress intended to have decided by a district judge rather than a bankruptcy judge).

In Wills Motors, Inc. v. Volvo North America Corp., 131 B.R. 263 (S.D.N.Y. 1991), the district court referred the issue of withdrawal of the reference to the bankruptcy judge for a recommendation[3]. The bankruptcy judge found that since the complaint in the civil proceeding was bottomed on the defendant's alleged violation of the ADDCA, "substantial and material consideration must be given to [that] federal statute regulating activities affecting interstate commerce, which invoke[d] the concept of mandatory withdrawal within the meaning of 28 U.S.C. § 157(d)." Id. at 268. However, the bankruptcy judge also recommended that in the event mandatory withdrawal was not applicable, permissive withdrawal should be granted. Id. at 268-269. In ordering withdrawal of the reference, the district court did not expressly indicate whether it was granting mandatory or permissive withdrawal. Id. at 264. However, in using the phrase "and good cause having been shown," the district court implicitly granted permissive, not mandatory, withdrawal, since no cause need be shown for mandatory withdrawal.

In Boricua Motors Corp. v. Tamachi, Inc., 76 B.R. 891 (D. Puerto Rico 1987), the defendant sought withdrawal of reference of the adversary proceeding on the grounds that its resolution required consideration of not only the ADDCA, but also the Sherman Antitrust Act, 15 U.S.C. §§ 1 *et seq.*, and the Robinson-Patman Act, 15 U.S.C. § 13. The district court held that

---

[3] Referral of the issue of withdrawal to the bankruptcy court does not appear proper in light of Rule 5011(a) of the Federal Rules of Bankruptcy Procedure, which commits the hearing and determination of withdrawal motions exclusively to the district court. As the advisory committee's notes indicate, subdivision (a) of Rule 5011 makes it clear that the bankruptcy judge will not conduct hearings on a withdrawal motion. Fed. R. Bankr. Proc. 5011 advisory committee's notes. Accordingly, the bankruptcy judge's report and recommendation is not entitled to any deference.

the case could not be resolved "without giving due consideration to the issues of the Sherman Act, the Robinson-Patman Act, and the [ADDCA], all non-code statutes regulating interstate commerce." Id. at 892. The district court further held that although "it was mindful that the mandatory withdrawal provision of Section 157(d) is to be construed narrowly so that it does not become an 'escape hatch' for matters properly before the bankruptcy court[,] [r]esolution of the issues involved in [those] proceedings * * * [fell] within [the] narrow reading of Section 157(d)," that Congress intended. Id. at 893. Since Boricua was grounded upon federal non-Bankruptcy Code statutes other than just the ADDCA, its limited holding is inapposite to the instant matter. Accordingly, contrary to defendants' contentions, Wills and Boricua do not support mandatory withdrawal of the reference of this adversary proceeding.

Motions for mandatory withdrawal are typically granted only when "complicated interpretative issues, often of first impression, have been raised under non-Title 11 federal laws" Houbigant, 185 B.R. at 684; see also CIS, 172 B.R. at 753 (accord), or when there exists "substantial and material potential conflicts" between the Bankruptcy Code and non-Code federal laws. CIS, 172 B.R. at 753. Even a cursory review of the motions to dismiss filed in the bankruptcy court demonstrates that the issues involved in this adversary proceeding are not complex, and resolution of the proceeding does not require the bankruptcy court to engage in significant interpretation of the ADDCA. Moreover, Ford's claim that there are issues of "first impression" requiring interpretation of the ADDCA raised in the adversary proceeding was not raised in the pending motions to dismiss. In any event, although the Second Circuit Court of Appeals has not addressed the issues Ford claims to be of "first impression," there is case law on those issues. See, e.g. CIS, 172 B.R. at 754 (finding that the fact that there may be relatively few

cases applying the non-Code federal statutes and regulations in the particular context at issue in the adversary proceeding does not suggest the need for their significant interpretation by the bankruptcy court). In addition, defendants do not show any potential conflicts between the Bankruptcy Code and the ADDCA in this case. See, e.g. Houbigant, 185 B.R. at 684 (holding that in the absence of particularly complex issues, a case of first impression or a conflict between non-Bankruptcy Code federal law and the Bankruptcy Code, withdrawal of the Lanham and Tariff Act claims was not mandatory); In re Adelphi Inst., Inc., 112 B.R. 534, 537 (S.D.N.Y. 1990) (holding that it is not enough for defendants to show that the adversary proceeding involves RICO, that RICO is a complex statute, or that the bankruptcy court has not filed any reported RICO decisions, particularly since there are no potential conflicts between the Bankruptcy Code and RICO). Accordingly, withdrawal of the reference is not mandated in this case.

2. Discretionary or Permissive Withdrawal

Ford, the Goldstein defendants, and the National Star defendants contend, *inter alia,* that even if withdrawal is not mandatory, the Court should exercise its discretion to withdraw the reference for purposes of, *inter alia*, judicial economy. In addition, the National Star defendants contend that their Seventh Amendment right to a jury trial on every count of the amended complaint necessitates the withdrawal of the reference, since, pursuant to 11 U.S.C. § 157(e), a bankruptcy court may only conduct a jury trial if, *inter alia*, all parties consent, and they have not given that consent.

Nisselson contends that the Court should not exercise its discretion to grant permissive

withdrawal to sever the "non-core" claims from the "core" claims, since all of the claims are factually and legally intertwined. Nisselson notes that Judge I. Leo Glasser recently denied a motion to withdraw a reference at the pretrial stage in another adversary proceeding filed in the Monahan Ford case entitled McCord v. Papantoniou, 316 B.R. 113 (E.D.N.Y. 2004) (the McCord proceeding) on the ground, *inter alia*, of judicial efficiency. In addition, Nisselson contends that a party's right to a jury trial does not warrant withdrawal at the pretrial stage.

In response, Ford contends that the McCord proceeding is distinguishable, since the only basis for withdrawal in that proceeding was a jury demand and the majority of claims in that proceeding were "core" and related to the bankruptcy case; whereas in this adversary proceeding, the "non-core" claims predominate over the "core" claims and are distinct from the issues in the bankruptcy case.

In determining whether there is "cause" for discretionary or permissive withdrawal, the district court must first consider whether the claim or proceeding is "core" or "non-core," and then it must consider (1) whether the claim or proceeding is legal or equitable in nature; (2) whether withdrawal would promote judicial efficiency; (3) the prevention of forum shopping; (4) the interest of uniformity in the administration of bankruptcy law; and (5) the delay and costs to the parties. In re Orion Pictures Corp., 4 F.3d 1095, 1101 (2d Cir. 1993).

      a.     "Core" or "Non-Core" Proceeding

28 U.S.C. § 157 classifies matters as either "core proceedings," which the bankruptcy court may "hear and determine" and on which the court "may enter appropriate orders and judgments," § 157(b)(1), or "non-core proceedings," which the bankruptcy court may only "hear"

and for which the court may only "submit proposed findings of fact and conclusions of law to the district court" for *de novo* review, § 157(c)(1). A determination of whether a matter is "core" or "non-core" depends upon the nature of the proceeding. In re Best Products Co., Inc., 68 F.3d 26, 31 (2d Cir. 1995). "Core proceedings" are "those that are unique to or uniquely affected by the bankruptcy proceedings, or directly affect a core bankruptcy function," or those that "invoke[] a substantive right provided by the Bankruptcy Code or * * * could only arise in the context of a bankruptcy case." McCord, 316 B.R. at 119 (citations omitted); see also CIS, 172 B.R. at 755 (accord).

28 U.S.C. § 157(b)(2) provides a non-exclusive list of "core" proceedings, including, *inter alia*, matters concerning administration of the estate; allowance or disallowance of claims against the estate; counterclaims by the estate against persons filing claims against the estate; orders to turn over property of the estate; proceedings to determine, avoid, or recover preferences; and proceedings to determine, avoid, or recover fraudulent conveyances. "Congress intended that 'core proceedings' would be interpreted broadly, close to or congruent with constitutional limits." Best Products, 68 F.3d at 31 (citing In re Arnold Print Works, Inc., 815 F.2d 165, 168 [1st Cir. 1987]).

With respect to FMCC, by filing a claim against the bankruptcy estate which affects the allowance of its claim, FMCC "trigger[ed] the process of 'allowance and disallowance of claims,' thereby subjecting [itself] to the bankruptcy court's equitable power." Langenkamp v. Culp, 498 U.S. 42, 44, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990) (per curiam) (citation omitted); see also Germain v. Connecticut Nat. Bank, 988 F.2d 1323, 1327 (2d Cir. 1993)(holding that only claims affecting the allowance of the creditor's claim are part of the process of "allowance

and disallowance of claims"). Moreover, "claims in an adversary proceeding are tantamount to counterclaims against a creditor who filed a claim against the estate under § 157(b)(2)(B)." In re Iridium Operating LLC, 285 B.R. 822, 831 (S.D.N.Y. 2002). Accordingly, since the traditionally "non-core" claims against FMCC are related to FMCC's proof of claim, in that they arise from the same time transactions and occurrences, the bankruptcy court has core jurisdiction to determine the claims against FMCC pursuant to sections 157(b)(2)(B) and (C). See, e.g. Id. (finding that courts in the Second Circuit have consistently held that adversary proceedings against a creditor that have traditionally been "non-core" become "core" pursuant to sections 157[b][2][B] and [C] due to the filing of a proof of claim); CIS, 172 B.R. at 761 (holding that the filing of a proof of claim against the estate's assets is an act which falls directly within the bankruptcy court's core jurisdictions).

With respect to the remaining defendants, it is essentially undisputed that the amended complaint in the adversary proceeding contains both "core" and "non-core" claims. Assuming, without deciding, that the "non-core" claims predominate over the "core" claims, as alleged by Ford, the "non-core" claims are sufficiently related to the "core" claims so as to militate against severing the claims for pretrial purposes.

      b.    Legal or Equitable Nature of Claims

Nisselson's claims, *inter alia*, for fraudulent conveyance and for monetary relief are legal in nature and, thus, defendants are entitled to a jury trial with respect to those claims. See, e.g. McCord, 316 B.R. at 123-124. The fact that some of the claims in the amended complaint in the adversary proceeding also seek equitable relief does not deprive defendants of their right to a jury

trial. See, Id. at 124 (holding that since the defendant's right to a jury trial is preserved where both legal and equitable claims are asserted, the defendant is entitled to a jury trial).

  c. Jury Trial

The Reexamination Clause of the Seventh Amendment to the United States Constitution prohibits bankruptcy courts from holding jury trials in "non-core" proceedings. See, Orion, 4 F.3d at 1101; McCord, 316 B.R. at 124; CIS, 172 B.R. at 755. Accordingly, a district court may find cause for withdrawal of a reference in a "non-core" proceeding in which the defendant is otherwise entitled to a jury trial and in which a jury demand is filed. See, Orion, 4 F.3d at 1101-1102; CIS, 172 B.R. at 755.

Moreover, a bankruptcy court may conduct a jury trial in "core" proceedings only when specifically designated to exercise such jurisdiction by the district court and with the express consent of all of the parties. See 28 U.S.C. § 157(e); McCord, 316 B.R. at 125. Since none of the defendants in this adversary proceeding have consented to a jury trial in the bankruptcy court, and the district court has not designated that bankruptcy courts will have such jurisdiction, defendants will not have a jury trial in the bankruptcy court. See McCord, 316 B.R. at 125.

  d. Judicial Economy

However, "a district court is not compelled to withdraw a reference simply because a party is entitled to a jury trial." Enron, 2004 WL 2912893, at * 2; see also In re Kleinert's, Inc., No. 04 Civ. 5286, 2004 WL 1878787, at * 2 (S.D.N.Y. Aug. 19, 2004)(holding that the right to a jury trial does not require an immediate withdrawal of the reference). Courts routinely deny

motions to withdraw reference of an adversary proceeding at the pretrial stage because of prevailing concerns about judicial economy. See McCord, 316 B.R. at 125-126 (citing cases); see also Enron, 2004 WL 2912893, at * 2 (holding that district courts are generally unreceptive to motions to withdraw references where the underlying action is in its preliminary stages and is closely related to proceedings pending before the bankruptcy court); In re Formica Corp., 305 B.R. 147, 150 (S.D.N.Y. 2004)(holding that the right to a jury trial does not compel withdrawing the reference until the case is ready to proceed to trial); Apponline.com, 303 B.R. at 728 (denying withdrawal where the adversary proceeding was in its preliminary stage, the matter might be resolved by the dispositive motions filed in the bankruptcy court and the bankruptcy court had been presiding over discovery in similar adversary proceedings in that bankruptcy matter); Adelphi, 112 B.R. at 538 (holding that the appropriateness of discretionary withdrawal on Seventh Amendment grounds becomes ripe for determination if and when the case becomes trial-ready).

The following reasoning by Judge Glasser in the related McCord proceeding is equally applicable to this adversary proceeding:

> Given that the core and other claims underlying the adversary proceeding are based on related facts * * * it would be efficient for the bankruptcy court to preside over all claims at [the pretrial] stage. Moreover, severing core claims from related claims would risk duplicating presentations on substantially overlapping factual matters. Such a process would cause unnecessary delay and deplete both judicial resources and the assets of the bankruptcy estate.

316 B.R. at 126 (internal quotations and citation omitted). Moreover, the bankruptcy court is best situated to continue managing the pretrial process in this adversary proceeding, particularly since the underlying Monahan Ford case has been pending since October 17, 2002 and the

bankruptcy judge has managed that case, the related McCord proceeding and the instant adversary proceeding filed by Nisselson in 2004. See, e.g. Id. (finding that the bankruptcy court was best situated to continue managing the pretrial process of the adversary proceeding); Apponline.com, 303 B.R. 723 (denying permissive withdrawal where the bankruptcy court had a complete understanding of the factual background of the underlying bankruptcy and had presided over discovery in that and other similar adversary proceedings in the bankruptcy matter); Kleinert's, 2004 WL 1586466, at * 2 (denying withdrawal of the reference at the pretrial stage where the Chapter 11 case had been pending before the bankruptcy court for one year and the bankruptcy judge had developed some familiarity with the industry in which the claims arose and would have an accurate sense of the pace and needs of the overall bankruptcy proceeding).

Defendants' contentions that judicial economy weighs in favor of withdrawing the adversary proceeding to this Court are without merit, particularly since Ford, FMCC, and the Goldstein defendants have already moved to dismiss the adversary proceeding in bankruptcy court. See, e.g. Formica, 305 B.R. at 150-151 (finding that plaintiff's contention that the district court would have to review any bankruptcy court determination *de novo* carried little weight in light of the litigation which had already occurred before the bankruptcy court, including motions to dismiss the adversary proceeding).

Moreover, the interest of consistent administration of bankruptcy law would best be served by deferring withdrawal of the reference until this case is trial-ready, since the adversary proceeding includes both "core" and "non-core" claims and the bankruptcy court is already familiar with the underlying and related actions. See, e.g. Iridium Operating, 285 B.R. at 835 (holding that consistent administration of bankruptcy law would be best served by the bankruptcy

court adjudicating the adversary proceeding, especially since the adversary proceeding includes both "core" and "non-core" claims). In addition, none of the defendants have established that they "will suffer any measurable injury or prejudice if the case is not withdrawn now." Kleinert's, 2004 WL 1878787, at * 3; see also In re Times Circle East, Inc., Nos. 94 B 455593, 95 Civ. 2838, 1995 WL 489551, at * 3 (S.D.N.Y. Aug. 15, 1995)(denying withdrawal of the reference at the pretrial stage where, *inter alia*, the defendant failed to show how it would be prejudiced by having the bankruptcy court oversee pretrial matters). Accordingly, although defendants have refused to consent to a jury trial in bankruptcy court, judicial efficiency will be promoted, and the cost and delays to the parties will be mitigated, by allowing the adversary proceeding to remain in the bankruptcy court, where it can be coordinated with the other related proceedings that are pending in that court, until the case is ready for trial.

III. CONCLUSION

FMCC's and Ford's motions for withdrawal of the reference of the adversary proceeding is denied without prejudice to renewal when the bankruptcy court certifies that this adversary proceeding is ready for trial.

SO ORDERED.

SANDRA J. FEUERSTEIN
United States District Judge

Dated: September 30, 2005
Central Islip, New York

Copies to:

WILSON, ELSER, MOSKOWITZ, EDELMAN
& DICKER, LLP
3 Gannett Drive
White Plains, New York 10604

BARGER & WOLEN LLP
10 East 40th Street, 40th Floor
New York, New York 10016

SNOW BECKER KRAUSS PC
605 Third Avenue, 25th Floor
New York, New York 10158

ESANU KATSKY KORINS & SIGER, LLP
605 Third Avenue, 16th Floor
New York, New York 10158

BRAUNER BARON ROSENZWIEG KLIGLER
SPARBER BAUMAN & KLEIN
61 Broadway, 18th Floor
New York, New York 10006